# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ARKANSAS,

### AT THE JANUARY TERM, A. D. 1860.

————————————————

## CONWAY VS. KINSWORTHY.

The owner of an unlocated donation claim, executed a scaled instrument, acknowledged and recorded, reciting that he had sold the claim, and covenanting to make the vendee a deed conveying the legal title to the lands to be entered with it, after the issuance of the patent: *Held,* that, upon the issuance of the patent, the vendor held the legal title to the lands as a trustee for the benefit of his vendee; and on his failure to comply with his contract, the vendee might either have sued at law for breach of the covenant, or have filed a bill for a specific performance of the contract.

The complainant, having an equitable interest in land, filed a bill in chancery to establish and quiet his title to it; thirteen years had elapsed from the time his right to bring his suit accrued until the filing of the bill; he made no proof that during that time, he asserted any claim to the land, paid taxes upon it, or exercised any dominion over it: the defendant and those under whom he claimed, for more than the period of limitation, held the legal title, exercised dominion over the land, paid the taxes upon it, and openly claimed it adversely to the right of the com-

plainant: *Held*, that the relief sought by the complainant was barred before the filing of the bill.

The person holding the legal title to lands is constructively in possession of them; and where they are wild and unimproved, it is not necessary that he should actually go upon them, and inclose and improve them, to constitute such adverse possession as will cause the statute of limitations to commence running in his favor against one having an equitable title—open and notorious acts of ownership are sufficient in such case.

*Appeal from the Circuit Court of Sevier county in Chancery.*

HEMPSTEAD for the appellant.

A contract to convey lands carries an equitable title, and the right to compel a conveyance of the legal title descends to the heir of the purchaser. *Rutherford vs. Green*, 2 *Iredell's Ch. R.* 121.

A mere possibility coupled with an interest in real estate is assignable. *Wright vs. Wright*, 1 *Ves. Sr.* 491; *Lawrence vs. Bayard*, 7 *Paige* 76.

Although the entry had not been made when Hall conveyed in 1836, yet he had a vendible interest at that time, and did sell it, and that sale is valid. The case of *Fisher vs. Fields*, 10 *Johns. R.* 496, is precisely in point to prove that proposition.

The defence of the statute of limitations of ten and five years cannot prevail, because it distinctly appears from the evidence, that no person has ever been in the actual possession of these lands or any part of them. There never has been a *possessio pedis*. There must be actual possession of the land. Lapse of time and actual, not constructive possession must unite. And this constitutes the adverse possession, which is required to oust or destroy the right of the true owner. *Angell on Limitation*, 400; *Bradstreet vs. Huntington*, 5 *Peters.* 402. It is not the possession alone, says Mr. Justice Thompson, but that it is accompanied with the claim of the fee, which by construction of law is deemed *prima facie* evidence of such an estate. *Paine's C. C. R.* 457.

No person can plead or rely on the statute of limitations,

unless his possession has been adverse to that of the person who claims against him. 3 *Cruise Dig.* 475; *Angell,* 404. The possession must be so open and exclusive as to amount to a disseizin. *Sparhawk vs. Bullard,* 1 *Met.* 95. *Coke* says that *seizin* signifies in the common law possession. *Co. Litt.* 153 *a; Frost vs. Cloutman,* 7 *N. Hamp. R.* 15: *Abell vs. Harris,* 11 *Gill & J.* 371; *Angell on Lim.* 412, 413.

It is incumbent on a person claiming land by virtue of possession, to prove an actual occupation and appropriation of what he so claims within some defined boundaries. Strong acts of exclusive possession, such as building, enclosing, cultivating or improving, and that for a long time, and openly and notoriously, are necessary in order to constitute an actual ouster of the true owner. *Blood vs. Wood* 1 *Met.* 535; *Potts vs. Gilbert,* 3 *Wash. C. C. R.* 475; *Doe vs. Campbell,* 10 *Johns.* 477.

The occupation must in fact be visible and notorious, because the statute proceeds upon the ground that there has been an acquiescence on the part of the owner of the land, and which supposition could never be indulged if an occupation was so secret or clandestine as not to afford notice. *Angell,* 416. If land has been enclosed and used in such a manner as to give publicity to the possession, continued residence on it is not necessary to constitute possession. *Johnson vs. Irvine,* 3 *Serg. & R.* 291; *Jackson vs. Howe,* 14 *Johns.* 405; *Barr vs. Gratz,* 4 *Wheat.* 213; *Cummings vs. Wyman,* 10 *Mass.* 464.

There must in any event be visible and notorious acts of ownership over the premises for the time limited by statute, to constitute such possession as may be availed of. *Ewing vs. Burnett,* 11 *Peters* 53; *Angell* 427.

The occasional cutting of timber on land does not amount to a possession; *Smith vs. Mitchell* 1 *Marsh.* 207. Clearing and cultivating land without actual residence upon it, is said to be insufficient: *Hoy vs. Perry* 1 *Litt.* 171. Digging a canal and felling trees are not sufficient; *McCarty vs. Fourcher,* 12 *Mart. Louis. R.* 11. So payment of taxes does not constitute a pos-

session; *Sorber vs. Willing* 10 *Watts.* 142; *Nagle vs. Albright,* 4 *Whart.* 291.

GARLAND, also for appellant.

WATKINS & GALLAGHER, for the appellee.

Mr. Chief Justice ENGLISH, delivered the opinion of the Court.

This was a bill filed by Elias N. Conway, on the 14th of July, 1853, in the Sevier Circuit Court, against Ezekiel Kinsworthy, the unknown heirs of Samuel Hall, deceased, William Burton, and the unknown heirs of George T. Boring, deceased. The objects of the bill were to obtain partition of the *N. E.* and the *S. E. fractional quarters of section* 12, *in Township* 14 *South, Range* 32 *West,* and to establish and quiet complainant's title to one-third of said tracts of land.

There was a decree *pro confesso* against all of the defendants except Kinsworthy, who answered; and upon the final hearing the bill was dismissed for want of equity, and Conway appealed.

Kinsworthy, in his answer, relied upon two grounds of defence: *first,* that he had purchased the lands, in good faith, without notice of Conway's claim; and *second,* that the relief sought by the bill was barred by lapse of time.

Conway's claim to the lands is derived as follows:

On the 15th day of March, 1836, Samuel Hall executed to Alexander Burton, (the father of the defendant, William Burton,) George T. Boring and John R. Conway, a sealed instrument, reciting that, by virtue of the act of Congress, of 24th May, 1828, etc., he was entitled to a donation of land not exceeding two quarter sections, which he had the right to enter with the Register of the proper land office in Arkansas; that he had sold to said Burton, Boring and Conway, all his right and title to the land to be entered by his donation claim, and authorized them to enter the land in his name, but it was not known at that time upon what lands the claim would be located—

*therefore,* it was witnessed by the instrument that said *Hall,* in consideration of the sum of $260, to him in hand paid by Burton, Boring and Conway, covenanted with them that he would, on demand by them, or without such demand as soon as a patent should be issued by the President of the United States, execute and deliver to them, their heirs, etc.; a deed, with covenants of warranty, for all such lands as might be entered by virtue of his donation claim, etc., etc. He further covenanted that his right to the donation had been proven up before the Register of the Land Office, at Washington, and that he would furnish additional proof if required, etc.

The instrument was acknowledged by Hall, and registered in the Recorder's office of Sevier county, where he then resided.

On the 17th of August, 1839, after the donation claim had been located upon the lands above described, situate in Sevier county, and the certificate of entry was issued, but before the patent was granted, John R. Conway conveyed to the appellant, Elias N. Conway, an undivided third of said lands, reciting in the deed that they had been entered by virtue of Hall's donation claim, and that the Register's certificate had been issued for the lands in his favor, etc.

The deed was acknowledged and filed for registration in the Recorder's office of Sevier county, on the day of its execution.

The title of the appellee, Kinsworthy, is derived as follows:

On the 14th of December, 1839, a patent was issued by the President of the United States, to Hall for the lands above described, which was filed for registration, and recorded in the Recorder's office of Sevier county, on the 28th of January, 1840.

On the 7th day of March, 1840, Hall, by absolute deed, with covenants of warranty, sold and conveyed the lands to Robert Hamilton, of Sevier county, for $300; and the deed was duly acknowledged, and filed for registration in the office of the Recorder of said county, on the 18th of June, 1840.

On the 1st November, 1838, H. S. and A. Roach recovered a judgment against Hamilton, in the Sevier Circuit Court; upon

which an execution was issued to the sheriff of said county, on the 12th of August, 1845, levied upon the lands in question, with other lands, etc., as the property of Hamilton; which were sold by the sheriff, on the 13th of October, 1845, and purchased by Benjamin L. Brittin and Grandison D. Royston, jointly; to whom, on the day after the sale, the sheriff executed a deed for the lands, which was acknowledged in open Court, and filed for registration in the office of the Recorder of said county, on the 15th of October, 1845.

On the 1st of July, 1847, Royston and wife, by quit claim deed, sold and conveyed his undivided interest in the lands to Brittin; and the deed, duly acknowledged, was filed for registration 12th August, 1847.

On the 23d September, 1847, Brittin sold and conveyed all his right, title, claim and interest in and to the lands to Kinsworthy, without warranty, except as against persons claiming under him, etc., and the deed was duly acknowledged, and on the 18th November, 1847, filed for registration, etc.

The material facts proven by the depositions, read upon the hearing, are, in substance, as follows:

*Brittin* deposed that at the time Royston and himself purchased the lands at the sheriff's sale, he supposed they were getting a clear and perfect title; that he never heard of any adverse claim to them until after he sold and conveyed them to Kinsworthy. That, during the time deponent and Royston owned them jointly, they paid the taxes on them, etc.

*Royston* deposed that at the time he and *Brittin* purchased the lands they were understood to be in the possession of Hamilton; and from that time to the year 1847, he considered them to be in the possession of Brittin and himself. At the time Brittin and himself purchased them, he supposed they were getting a good title. Never heard of any adverse claim until after the institution of this suit. Had no knowledge of the instrument executed by Hall to Conway, Burton and Boring.

*Jackson* deposed that he was sheriff of the county of Sevier from 1840 to 1848; that Hamilton claimed the lands and paid

taxes on them until they were sold under execution, as his property, in October, 1845; after which Brittin and Royston paid taxes on them as long as deponent was sheriff. Neither the appellant, Conway, nor any person for him, paid any taxes on the lands while the deponent was in office.

*Hawkins* deposed that the first knowledge that he had of the lands in dispute was in 1842, when they were held and claimed by *Hamilton*, who, some time during that year, placed in deponent's hands a deed from Hall to him (Hamilton,) for the lands; and requested deponent to sell them to one Paxton. The deed was placed in deponent's hands, to be shown to Paxton as evidence of Hamilton's title, etc. Hamilton continued to exercise ownership over the lands until some time in the year 1845, when they were sold by the sheriff as his property, and purchased by Brittin and Royston; who claimed possession of and exercised acts of ownership over them until some time in the year 1847, when Kinsworthy purchased them, and had claimed the possession and ownership of them ever since. Defendant knew the lands well, had lived near them, and in the neighborhood where Hamilton resided, for nineteen years.

There had been no actual residence or improvement on the lands since witness had known them, but they had been claimed by Hamilton and others, as above stated.

*Penny* deposed that he was sheriff of Sevier from 1848 to 1850, and that the lands, for these years, were assessed to Kinsworthy, and the taxes paid by him. The appellant, nor any one for him, paid taxes upon them while deponent was sheriff, etc.

By the sealed instrument of 15th March, 1836, Hall sold to Burton, Boring and John R. Conway, his unlocated donation claim (commonly known as a *Lovely claim*), and covenanted to make them a deed conveying to them the legal title to the lands to be entered with the claim, after the issuance of the patent. When the patent was granted to him, he held the legal title to the lands as a trustee for their benefit. On his failure or refusal to comply with his contract, they had two remedies against

him: a suit at law for breach of his covenant to convey, or a bill in equity to compel him to a specific performance of the contract.

On the 7th of March, 1840, and after the issuance of the patent to him, Hall, in open and direct violation of his contract, and of his duty and obligation as a trustee, sold and by absolute deed acknowledged and put upon the public records, conveyed the lands to Hamilton. Prior to this time the appellant had purchased the claim of John R. Conway to the land, and succeeded to his right to bring a suit in equity to enforce the contract of Hall to convey the legal title, etc.

From the time Hamilton purchased the lands of Hall until the 13th October, 1845, he openly claimed them, and paid taxes on them. They were then sold by the sheriff, after public notice, as his property, and purchased by Brittin and Royston, who took the sheriff's deed, acknowledged in the Circuit Court, and put upon the public records. They held and claimed the lands, and paid taxes on them jointly until July, 1847, when Royston conveyed to Brittin, who shortly after sold and conveyed them to Kinsworthy, and both of these conveyances were recorded. Kinsworthy claimed and paid taxes on the lands from the time he purchased them until the institution of this suit by appellant, 14th July, 1853.

Thus, a period of over thirteen years elapsed from the time the right of appellant to bring his suit accrued until the filing of the bill; during all which time there is no proof that he asserted any claim to the lands, or exercised any dominion over them; but the appellee, and the persons through whom he claimed, (Brittin, Royston and Hamilton,) during that time, and for more than the full period prescribed by law for the limitation of actions for the recovery of lands, suits upon covenants, etc., held the legal title to the lands, exercised dominion over them, and openly claimed them adversely to the right of the appellant.

Under these circumstances we think the relief sought by the appellant was barred before the filing of the bill. *Harris vs.*

*King*, 16 *Ark*. 126; *Harriet et al. vs. Swan et al.* 18 *Ark*. 507; *Sullivan vs. Hadley et al.* 16 *Ark*. 145.

Hamilton having purchased the legal title to the lands of Hall, he and the other persons holding the legal title under him, were constructively in possession of the lands. (*Angell on Lim. p.* 400; *United States vs. Arredonda et al.* 6 *Peters*, 743; *Lessee of Clarke et al. vs. Courtney et al.* 5 *Ib*. 354; *Green vs. Liter*, 8 *Cranch*, 229.)

The lands being wild and unimproved, it was not necessary for the person holding the legal title to actually go upon them, and enclose or improve them, to constitute such adverse possession as would cause the statute of limitations to commence running against appellant. *Angell on Lim.* 421, 422, 423; *Ewing vs. Burnett*, 11 *Pet.* 53; *Draper vs. Shoot*, 25 *Mo*. 19. Open and notorious acts of ownership are sufficient in such case. *Ib.*

The decree of the court below is affirmed.

Absent, Mr. Justice RECTOR.